IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| DENNIS E. NICHOLS, | ) | Civil Action No.  3:11-cv-02927-DCN-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, COMMISSIONER | ) | |
| OF  SOCIAL SECURITY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et

seq., DSC, concerning the disposition of Social Security cases in this District.  Plaintiff brought this

action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision

of the Commissioner of Social Security ("Commissioner") denying his claims for Disability

Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").

**ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed applications for DIB and SSI on March 4, 2008.  After a hearing on January 15,

2010, the ALJ issued a partially favorable decision on March 31, 2010, awarding Plaintiff benefits

as of September 11, 2009, but not before. Tr. 238-255. On September 8, 2010, the Appeals Council

affirmed the ALJ's finding that Plaintiff was disabled as of September 11, 2009, but remanded the

case to the ALJ for further consideration of Plaintiff's claims prior to that date. Tr. 256-260. A new

hearing was held on January 26, 2011, at which Plaintiff and a vocational expert ("VE") appeared

and testified. Tr. 27-90.  The ALJ issued a decision on April 27, 2011, finding Plaintiff was not

disabled between December 1, 2006,[1] and September 10, 2009. The ALJ concluded that work

existed in the national economy which Plaintiff could perform.

Plaintiff was forty-four at the time he alleges he became disabled (December 1, 2006). He

has a high school education and past work experience as a warehouse manager. Tr. 81-82, 352, 355.

Plaintiff alleges disability due to depression and sciatic nerve damage. Tr. 351.

The ALJ found (Tr. 12-20):

1.    The claimant meets the insured status requirements of the Social
      Security Act through December 31, 2006.

2.    The claimant has not engaged in substantial gainful activity since
      December 1, 2006, the amended onset date (20 CFR 404.1571 *et seq.,*
      and 416.971 *et seq.*).

3.    Since the amended onset date of December 1, 2006 until September
      11, 2009 the claimant has had the following severe combination of
      impairments: obesity, mild disc bulge at L3-4 and depression (20 CFR
      404.1520(c) and 416.920(c)).

4.    Between December 1, 2006 and September 11, 2009, the claimant did
      not have an impairment or combination of impairments that met or
      medically equaled one of the listed impairments in 20 CFR Part 404,
      Subpart P, Appendix 1 (20 CFR  404.1520(d), 404.1525, 404.1526,
      416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that between
      December 1, 2006 and September 11, 2009, the claimant had the
      residual functional capacity to perform a range of sedentary work as
      defined in 20 CFR 404.1567(a) and 416.967(a). The claimant could
      have lifted, carried, pushed and pulled 10 pounds occasionally, and
      could have lifted, carried, pushed and pulled less than 10 pounds
      frequently. He could have stood and walked for two hours of an eight
      hour workday, and could have sat for six hours of an eight hour
      workday. He could have never climbed ropes, ladders or scaffolds.
      He could have occasionally climbed ramps or stairs. He could have

---

[1]Plaintiff originally alleged that he became disabled on April 1, 2000, but amended his alleged
onset date at the January 2011 hearing to December 1, 2006. Tr. 29.

occasionally balanced, stooped, kneeled, crouched, or crawled. The claimant should have avoided all exposure to heavy vibration, and avoided all exposure to hazards such as dangerous machinery and unprotected heights. The claimant could have concentrated, persisted and worked at pace to do simple, routine and repetitive tasks at level three reasoning per DOT for two-hour periods in an eight-hour workday. He could have interacted occasionally with the public and could have interacted appropriately with co-workers and supervisors in a stable and routine setting.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.     The claimant was born on October 22, 1962 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2006, through September 10, 2009 (20 CFR 404.1520(g) and 416.920(g)).

The Appeals Council denied the request for review in a decision issued September 1, 2011 (Tr. 1-3), and the ALJ's decision became the final decision of the Commissioner. Plaintiff filed this action in the United States District Court on October 27, 2011.

## STANDARD OF REVIEW

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972).  Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

## MEDICAL EVIDENCE

Plaintiff was in a car accident in November 1991, wherein he was ejected from the vehicle and sustained a head injury with a mildly depressed right frontal skull fracture, a T-11 burst fracture, and multiple lacerations and contusions. Tr. 607. Plaintiff remained in the hospital for nineteen days, and was released in a cast and with a requirement of bed rest. Plaintiff returned to work approximately one year after the accident.  Tr. 60. There are no further treatment records in the file until 2008.

On January 24, 2008, Plaintiff visited Taylors Free Medical Clinic ("Taylors") with complaints of urinary frequency, a toenail infection, and needing eye and dental examinations. Plaintiff's past medical history was reported as "healthy." The assessment noted that Plaintiff had L9-L11 lower back pain, and that he broke lumbar areas in 1991. Tr. 469.  Plaintiff returned to the clinic on March 3, 2008, stated his urinary frequency had improved, but complained of low back pain and right leg numbness with sciatica.  He stated he wanted to get long-term disability started. He was

4

referred for an MRI. Tr. 520. A lumbar MRI performed on March 31, 2008, showed neural foraminal narrowing and a right disc protrusion at L4-5 and milder disc bulging at L3-4. Tr. 474. On April 7, 2008, Plaintiff complained of depression and was prescribed Zoloft. Tr. 519.

On April 24, 2008, Dr. Karl R. Bodtorf (a psychologist), performed a consultative examination. Plaintiff complained of longstanding depression, even since high school, although he acknowledged that he had not ever sought mental health treatment. Plaintiff said he had poor concentration, difficulty sleeping, and low energy. Dr. Bodtorf diagnosed major depressive disorder and thought Plaintiff appeared to have moderate limitations with respect to independent functioning; mild-to-moderate limitations with respect to memory/concentration; and moderate to perhaps moderately severe limitations with respect to social functioning. He noted that Plaintiff appeared to be able to take care of his basic needs and could take care of day-to-day financial matters. Tr. 478-482.

Plaintiff returned to Taylors on May 12, 2008. He reported he stopped taking Zoloft because it had caused headaches. Plaintiff was advised to resume Zoloft and to not stop taking it abruptly. He was referred for counseling. Tr. 518.

On May 15, 2008, Dr. Craig Horn, a state agency psychologist, reviewed the evidence and completed a Psychiatric Review Technique form. Dr. Horn opined that Plaintiff had an affective disorder which resulted in moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. Tr. 497-507. Dr. Horn also completed a mental residual functional capacity ("RFC") assessment and opined that Plaintiff had moderate limitations in his ability to understand, remember, and carry detailed instructions and interact appropriately with the

5

general public. Dr. Horn opined that Plaintiff could understand, remember, and carry out short and simple instructions; make simple work-related decisions; ask simple questions; and respond appropriately to changes in a routine work setting. He thought that Plaintiff would perform best in situations that did not require on-going interaction with the public. Tr. 493-495.

Treatment notes from Dr. C. Jernigan at Taylors from August 12, 2008, indicate that Plaintiff complained of chronic lumbar pain. Dr. Jernigan's notes reflect Plaintiff had slightly decreased range of motion, but was neurologically intact in his legs and had negative straight leg raising tests. Dr. Jernigan diagnosed chronic non-operative lumbar back pain. Tr. 517.

On September 17, 2008, Dr. Xanthia Harkness, a state agency psychologist, reviewed the evidence and completed a Psychiatric Review Technique form. She opined that Plaintiff had an affective disorder resulting in moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. Tr. 531-544. Dr. Harkness also completed a mental RFC assessment in which she opined that Plaintiff had moderate limitations in his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; and interact appropriately with the general public. Dr. Harkness noted Plaintiff could understand, remember, and carry out short and simple instructions; attend to and perform simple tasks; work in proximity to others without being unduly distracted; make simple work-related decisions; ask simple questions; and respond appropriately to changes in a routine work setting. She thought that Plaintiff would perform best in situations that did not require on-going interaction with the public. Tr. 545-547.

Plaintiff was assessed at Taylors with mild hypertension, chronic low back pain, and depression on September 25, 2008. Tr. 560. On December 18, 2008, Plaintiff complained about lower back pain which caused him to have difficulty sleeping and resulting in his not being able to exercise or speed walk. Plaintiff had muscle tenderness and decreased range of motion, but negative straight leg raising tests and normal reflexes. Plaintiff was advised to take Cymbalta for his depression and to continue to see a chiropractor and take pain medications for his back. Tr. 559. On March 10, 2009, Plaintiff was advised to visit the orthopedic clinic for his back pain. Tr. 558. Plaintiff returned to Taylors on June 11, 2009, complaining of chronic back pain and mood swings with depression. Plaintiff said he was seeing a chiropractor every month for his back pain. He was advised to continue taking Cymbalta and his hypertension medications. Tr. 557. Treatment notes from Dr. Jernigan dated July 2, 2009, indicate that Plaintiff complained of chronic low back pain and stated he needed to get disability and Medicaid. Plaintiff had an inconsistent motor examination in his lower extremities secondary to his effort. He had absent ankle jerk reflexes, but Dr. Jernigan did not think Plaintiff had motor loss. Dr. Jernigan assessed chronic back pain and commented that there was "no viable solution to his complaints." Tr. 556.

Plaintiff was hospitalized for progressive depression and suicidal ideation from September 11, 2009, to September 17, 2009.[2] His discharge diagnosis was major depression, recurrent and severe without psychotic features. He was instructed to follow up at the Greer Mental Health Clinic and Taylors. Tr. 569-575.

---

[2]As noted above, Plaintiff was found disabled and awarded SSI benefits as of the time of this hospitalization (September 11, 2009).

Dr. Craig Young, a psychologist, performed a consultative examination on November 4, 2009. Plaintiff reported he worked for his parent's chemical company for twenty years, but after the business was sold, he did not have much success in working. Plaintiff said he was extremely isolated, had very few close friends, and was living with his mother. Dr. Young noted that Plaintiff's speech was somewhat slow with a tendency to have some difficulty organizing his thoughts. Plaintiff reported that he was able to read single words and sentences without much difficulty. Tr. 578.

Psychological testing revealed that Plaintiff could count from one to twenty forward and backward and state the months of the year in chronological order without difficulty, but he seemed anxious when trying to recall the months of the year backward. Visual spatial processing testing suggested Plaintiff had very poor ability to scan objects in his environment. He also displayed significant difficulty in rapidly responding to changing environmental demands and in tracking multiple cognitive tasks. Personality testing revealed a profile of an individual who tended to suffer from severe depression and anxiety and who was likely to engage in a great deal of introspection, rumination, and isolation from others. Tr. 579.

Plaintiff's profile suggested he was extremely withdrawn, introverted, and preoccupied with physical challenges. Dr. Young concluded that Plaintiff had at least a moderate impairment in areas requiring attention and concentration, mental flexibility, and social adjustment. He also noted Plaintiff's visual scanning speed and reaction time in general was severely impaired and that Plaintiff deteriorated emotionally and became anxious when required to perform tasks. Dr. Young thought Plaintiff's cognitive and emotional problems were related to his depression, pain, and possible concussion in 1991. He stated Plaintiff had significant psychological impairment in social functioning and adaptation to stresses and observed that "[i]n this regard, [Plaintiff] has recently been

8

hospitalized for treatment of suicidal ideation, and demonstrates emotional deterioration within this evaluation when asked to do items which are difficult for him." Tr. 580. Dr. Young opined that Plaintiff also had frequent psychological impairment in concentration, persistence, and pace and in activities of daily living. Tr. 580-581. He concluded that Plaintiff would be unable to meet deadlines at work or carry out work demands in a timely manner, do more than one thing at a time, and be reliable in the workplace as Plaintiff became emotionally unstable under pressure.  Dr. Young attributed the limitation to his depression, ongoing pain, and possible residual effects from his old traumatic brain injury ("TBI"). He diagnosed major depressive disorder and pain disorder. Tr. 581. Dr. Young completed forms regarding Plaintiff's ability to perform mental activities at work and indicated that Plaintiff's limitations had been present since at least March 4, 2008. Tr. 582-584. Additionally, Dr. Young completed a "Psychiatric Review Technique" form indicating that as of November 3, 2009, Plaintiff had marked restriction of activities of daily living and marked difficulties maintaining social functioning. Tr. 585-595.

On December 5, 2009, Dr. Young completed a supplemental report to further discuss the impact of Plaintiff's 1991 brain injury on his subsequent functioning. Dr. Young interviewed Plaintiff's mother, who stated that after his accident, Plaintiff became more withdrawn and depressed and stopped socializing. It was reported that Plaintiff started having trouble concentrating at work and his efficiency decreased. After his parent's business closed in 2000, Plaintiff attempted to work at two other companies, but both jobs ended because of his inability to concentrate and his reduced mental and physical stamina. Dr. Young opined that Plaintiff's difficulty with initiation, attention, concentration, and his reduced mental stamina were likely related to his TBI. Dr. Young thought that Plaintiff being allowed to work for his parents' company gave him enough support and structure to

function at a minimally acceptable level. Additionally, Dr. Young opined that Plaintiff was unable to sustain competitive employment secondary to his head injury and pain outside of that environment, and had been disabled since the onset of his brain injury, or at least since 2002. Tr. 637-638.

On December 9, 2009, Plaintiff consulted with Dr. John Satterthwaite, for an independent medical evaluation of his ongoing pain. Tr. 639.  On examination, Plaintiff walked with a cane, but had normal reflexes (except for an absent right Achilles reflex), negative straight leg raising tests, and no muscle atrophy. Tr. 641-642.  Dr. Satterthwaite noted Plaintiff could not bend his right wrist with his fist balled up. He assessed Plaintiff with depression, head trauma, low back pain, and myofascial pain syndrome. Tr. 642. Dr. Satterthwaite stated that Plaintiff's only medical treatment had been medications and occasional chiropractic manipulation and observed that "although subtle," Plaintiff had some memory problems and might have a mild cognitive impairment from his head injury which might cause difficulties with focus and remaining on task. He thought sedentary work would be extremely difficult because Plaintiff would be unable to sit more than four hours a day at thirty to forty-five minute intervals. Tr. 643.

Dr. Satterthwaite completed a medical source statement in which he opined that Plaintiff could lift and carry twenty pounds occasionally and less than ten pounds frequently; stand and walk for fifteen to thirty minutes at a time and for two hours in an eight-hour workday; sit thirty to forty-five minutes at a time and four hours total in an eight-hour workday; never climb, balance, stoop, kneel, and crawl; rarely push and pull and work around chemicals, dust, and fumes; occasionally reach, and work around noise, humidity and vibration; frequently handle; and frequently work around heights, moving machinery, and temperature extremes. Tr. 645-647.

## HEARING TESTIMONY

Plaintiff testified that he had not worked since 2002, because of back pain and depression. Tr. 53. He stated that he also had pain in his shoulders and legs. Tr. 55. Plaintiff reported he needed to change positions frequently, and could only walk about fifty feet because of pain. Tr. 58.  He testified that he used to live in a trailer but moved in with his mother in 2002 or 2003 because he could not live on his own. Tr. 58. Plaintiff testified that he could take care of his personal hygiene needs, but could not help with household chores or yard work. He reported he passed the time watching television. Tr. 59. Plaintiff testified that he was able to work for his father's business because his family accommodated him. Tr. 60. He stated that after the accident, he became very isolated and withdrawn. Tr. 62. Plaintiff acknowledged that after the accident in 1991, he did not receive any medical treatment again until January 2008. Tr. 65-66. He said that although he had been using a cane since 2002 or 2003, he did not take any medications, including over the counter medications, until 2008. Tr. 66-67. Plaintiff attributed his lack of medical treatment between 1991 and 2008 to not having any insurance or money. Tr. 68.

Dr. Young testified on Plaintiff's behalf.  He opined that the medical records relating to Plaintiff's 1991 accident indicated Plaintiff suffered contusions to the subfrontal and parietal regions of his brain.  Tr. 38.  Dr. Young stated that most neurological recovery of this type of brain injury occurs in the first three years after the injury.  He said that testing indicated that Plaintiff displayed deficits often associated with the anatomical sites of the brain where Plaintiff suffered injury and that some of the deficits were beyond that which could be accounted for solely on the basis of depression or pain.  Tr. 39.  Dr. Young opined that Plaintiff's mental limitations went "back quite a ways" and Plaintiff probably suffered from these issues since close to after the head injury in 1991.  Tr. 41.  He

speculated that Plaintiff had been able to work with these disabling conditions because Plaintiff had

a lot of family support.  Tr. 50-51.   Dr. Young also stated that Plaintiff had been living on his own

in a trailer, but had to move back in with his mother because Plaintiff became so depressed and "kind

of confused," that he was having trouble maintaining the trailer, paying bills, shopping, and cleaning.

Tr. 42.

A medical expert, Dr. Mark Schosheim, also testified at the hearing.  Dr. Schosheim stated

that Plaintiff's March 2008 MRI revealed degenerative disc disease at L3-4, L4-5, and L5-S1, as well

as a small right paracentral disc protrusion at L4-5 that impinged on the nerve root, but did not

actually compress the root.  He did not believe that Plaintiff's back impairment met or equaled a

listing because, other than an absent Achilles reflex, there were no other neurological findings.  Dr.

Schosheim testified that he did not agree with Dr. Satterthwaite's opinion that Plaintiff was limited

to less than sedentary work.  He instead opined that Plaintiff was able to lift, carry, push, and/or pull

ten pounds occasionally and less than ten pounds frequently; stand and/or walk for two hours in an

eight-hour day; sit for six hours in an eight-hour day; never climb ladders, ropes, or scaffolds; and

occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  Dr. Schosheim opined

that Plaintiff should avoid all exposure to heavy vibration, hazards, dangerous machinery, and

unprotected heights.  Tr. 72-74.  He explained that he disagreed with Dr. Satterthwaite's opinion in

part because the record showed that Plaintiff was most comfortable sitting, and Plaintiff had no upper

extremity issues which would limit his ability to reach.  Tr. 74.

Plaintiff's attorney questioned Dr. Schosheim about Plaintiff's October 2010 lumbar spine

x-ray (which was not in the record Dr. Schosheim previously reviewed).  Dr. Schosheim stated the

x-ray did not change his opinion that Plaintiff had the RFC for sedentary work.  Tr. 76-77.  He also

opined that the objective findings were significant enough that Plaintiff's pain was consistent with

these findings, and his opinion did not take into account Plaintiff's subjective complaints, perception

of pain, or the effect of Plaintiff's mental impairments.  Tr. 77-78.

## DISCUSSION

In his brief,[3] Plaintiff alleges that the ALJ: (1) violated 20 C.F.R. § 404.1527 by failing to set

forth good cause for rejecting the diagnoses, medical source statement, and opinions from examining

neuropsychologist Dr. Young, who provided the only assessment regarding the effect of Plaintiff's

TBI on his ability to function; (2) violated § 404.1527 by failing to set forth good cause for rejecting

the diagnoses, medical source statement, and opinion of examining physiatrist Dr. Satterthwaite; (3)

incorrectly evaluated his pain; and (4) the failed to give proper consideration to the VE's testimony

that there were no jobs available that Plaintiff could perform due to the severity of his combination

of physical and mental impairments.  Within each of these arguments, Plaintiff make numerous other

arguments, including that the ALJ failed to properly consider all of his severe impairments (including

TBI, degenerative disc disease, and residuals of thoracic injury); failed to consider all of his

impairments in combination, failed to properly consider all of medical expert Dr. Schosheim's

testimony and opinion, failed to consider the statement of his mother, and improperly discounted his

credibility based on his failure to seek treatment when he was unable to afford such treatment.  The

Commissioner contends that substantial evidence[4] supports the Commissioner's final decision that

---

[3]Plaintiff's brief exceeds the allowable thirty-five pages and there is no indication that an exception was requested.  See Local Civil Rule 7.05(B)(1).

[4]Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a
> particular conclusion.  It consists of more than a mere scintilla of evidence but

(continued...)

Plaintiff was not disabled within the meaning of the Social Security Act, the ALJ properly evaluated the medical opinion evidence and Plaintiff's credibility, and the ALJ properly found that Plaintiff could perform other work.

     A.    <u>Credibility/Pain</u>

     Plaintiff alleges that the ALJ erred in evaluating his credibility and pain because the ALJ failed to make the proper two-part analysis, failed to recognize some of Plaintiff's severe impairments, ignored Dr. Schosheim's testimony that there are objective findings significant enough to be consistent with the type of pain Plaintiff is complaining about, erroneously dismissed the opinions of examining physicians Dr. Young and Dr. Satterthwaite, failed to acknowledge that Dr. Schosheim did not consider Plaintiff's pain in his RFC findings, failed to make any mention of the affidavit from Plaintiff's mother concerning Plaintiff's impairments and their effect on his ability to work and perform activities of daily living, and gave too much weight to Plaintiff's lack of treatment (which Plaintiff was unable to afford). The Commissioner contends that the ALJ properly evaluated Plaintiff's credibility and discounted his credibility based on the objective medical evidence, Plaintiff's lack of treatment for sixteen years, and significant inconsistencies between Plaintiff's alleged limitations and his statements concerning the severity of his condition.

     In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain

---

    [4](...continued)

          may be somewhat less than a preponderance.  If there is evidence to justify a
          refusal to direct a verdict were the case before a jury, then there is "substantial
          evidence."

<u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984); <u>Laws v. Celebreeze</u>, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. <u>Cornett v. Califano</u>, 590 F.2d 91, 93 (4th Cir. 1978).

14

alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ does not appear to have properly applied the two-part test as outlined above. The ALJ merely stated that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Tr. 15.

Additionally, the ALJ did not discuss the statement provided by Plaintiff's mother in his decision. On January 24, 2011, Norma Nichols (Plaintiff's mother) stated that after Plaintiff's accident in 1991, he went from being in top physical shape to being seriously limited by pain, and he became severely depressed and withdrawn. Ms. Nichols also stated that Plaintiff was accommodated at work at the family's company by allowing him to take frequent rest breaks (during which he would sit or lay down on a couch) and to work at his own pace. She also stated that Plaintiff had trouble concentrating and finishing tasks, was easily distracted, tended to focus on his pain and depression, and could not handle any additional stress. Tr. 446-447. Plaintiff argues that Ms. Nichol's

15

affidavit supports his testimony regarding his severe depression, mental trauma, and severe back pain; his assertion that he was able to work in the family business after the accident due to his parents accommodating him with frequent breaks; his testimony that he had to move into his mother's home; and his reported limited daily activities. The Commissioner has not addressed this argument.

Ms. Nichol's statement appears to impact on Plaintiff's credibility. Additionally, in determining a claimant's RFC, "the ALJ must consider the relevant medical evidence and other evidence of the claimant's condition in the record, including testimony from the claimant and family members." Morgan v. Barnhart, 142 F. App'x. 716, 720 (4th Cir. 2005)(citing 20 C.F.R. § 404.1529(c)(3))).[5] Further, this lay evidence may provide support for Dr. Young's opinions, as discussed below.

To the extent that the ALJ discounted Plaintiff's credibility based on his lack of treatment, it is unclear whether it was proper to do so. Plaintiff argues that the ALJ should not have penalized him for failing to seek treatment because he testified that he was unable to afford treatment as he had no money and no insurance. The Commissioner did not address this argument in his brief. While a claimant's failure to obtain medical treatment that he cannot afford cannot justify an inference that his condition was not as serious as he alleges, see Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir.1986), an unexplained inconsistency between the claimant's characterization of the severity of his condition and the treatment he sought to alleviate that condition is highly probative of the

---

[5] Where a lay witness's testimony merely repeats the allegations of a plaintiff's own testimony and is likewise contradicted by the same objective evidence discrediting the plaintiff's testimony, specific reasons are not necessary for dismissing the lay witness's testimony. See Lorenzen v. Chater, 71 F.3d 316, 319 (8th Cir.1995); Carlson v. Shalala, 999 F.2d 180 (7th Cir.1993); Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir.1992); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir.1984).

claimant's credibility. See 20 C.F.R. § 416.929(c)(4); Mickles v. Shalala, 29 F.3d at 929-30. Here, Plaintiff testified as to a lack of funds and insurance for treatment (see Tr. 68, 168), but there is no further information in the record concerning this or whether there were low or no cost alternatives of which Plaintiff failed to take advantage.[6]

> B.    Opinion Evidence

Plaintiff alleges that the ALJ erred in discounting the opinion of Dr. Young that Plaintiff has likely been disabled since the onset of his TBI or at least since 2002. Specifically, Plaintiff argues that the ALJ failed to properly evaluate this opinion pursuant to 20 C.F.R. §§ 404.1527 and 416.927. He asserts that the ALJ should have assigned the most weight to Dr. Young's opinion because Dr. Young is a licensed clinical neuropsychologist with a specialty in TBI, he evaluated Plaintiff on two separate occasions, he administered psychometric tests which indicated that TBI was likely, and he obtained the hospital records from the 1991 accident and concluded that they confirmed his findings of TBI. Plaintiff argues that the ALJ erred by failing to give any retrospective consideration to Dr. Young's opinion where it was supported by the medical evidence and lay observations of Plaintiff during the relevant time period, and because the ALJ failed to call on the services of a medical advisor as required by SSR 83-20 when an onset date must be inferred. Additionally, Plaintiff argues that the ALJ erred in not finding that Plaintiff's TBI was a severe impairment. The Commissioner contends that the ALJ properly discounted Dr. Young's opinion because Plaintiff never sought any medical care for his alleged disabling mental impairments prior to 2008, in January 2008 his past medical history was listed as "healthy" and he made no mention of mental problems, Plaintiff told Dr. Bodtorf in April 2008 that he lived alone, and Dr. Bodtorf's

---

[6]Plaintiff appears to have found such alternatives beginning in 2008.

17

observations differed from those of Dr. Young. The Commissioner argues that the ALJ reasonably concluded that Plaintiff's mental functioning declined after his hospitalization for depression in 2009 and therefore reasonably declined to accept Dr. Young's speculation that Plaintiff experienced the same degree of mental limitations prior to that time. The Commissioner argues that the ALJ reasonably discounted Dr. Young's opinion based on Dr. Bodtorf's examination (which occurred during the relevant time period) and opinion.

In determining the weight to assign medical opinions, the adjudicator must consider: (1) the relationship between the provider and the claimant, including its length, nature, and frequency; (2) the degree to which the source presents an explanation and relevant evidence to support the opinion, particularly medical signs and laboratory findings; (3) how consistent the medical opinion is with the record as a whole; (4) whether the source is a specialist and offers an opinion related to the area of specialty; and (5) any other factors that tend to support or contradict the opinion. See 20 C.F.R. §§ 404.1527 and 416.927. The ALJ is not, however, required to expressly apply each of these factors in deciding what weight to give a medical opinion and not every factor applies in every case. See Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007); SSR 06-03p.

The ALJ discounted Dr. Young's opinion because such a determination is reserved for the Commissioner, the opinion was inconsistent with the longitudinal record, there was no objective medical evidence supporting the opinion (based on Plaintiff's lack of treatment from 1991 to 2008), it was not supported by Plaintiff's activities of daily living (that he indicated in the March 2008 function report that he was able to drive a vehicle, pay bills, count change, and use a checkbook or money order and that he told Dr. Bodtorf that he lived alone and took care of his personal needs), and it was not supported by the opinions of non-examining, non-treating physicians Dr. Horn and

18

Harkness (to which the ALJ gave significant weight) that Plaintiff was able to understand, remember, and carry out short and simple instructions and was able to attend to and perform simple tasks of unskilled work. The ALJ also found that Dr. Young's opinion was a retrospective attempt to find Plaintiff disabled before his date last insured and was "no better than a guess into the past because there is no medical or psychological evidence." Tr. 17.

Here, it is unclear that the ALJ properly weighed Dr. Young's opinion of disability. First, the ALJ did not discuss whether Plaintiff's TBI was a severe impairment. In addition to Dr. Young's diagnosis of TBI, the record contains records of treatment after Plaintiff's accident indicating a loss of consciousness, depressed skull fracture, multiple brain contusions, and cerebral edema. Dr. Satterthwaite also diagnosed Plaintiff with head trauma, closed. Tr. 642. As noted above, the ALJ failed to consider the affidavit of Plaintiff's mother in which she observed that Plaintiff became severely depressed and withdrawn, and could not finish tasks after the accident. The non-examining, non-treating physicians do not appear to have had reviewed the records from Plaintiff's 1999 accident prior to rendering their opinions (it appears these records were not obtained until after Dr. Young's first examination in November 2009), and these opinions do not include review of the test results from Dr. Young or consideration of Dr. Young's opinions. Additionally, the ALJ discounted Dr. Young's opinion because it was a retrospective attempt to find Plaintiff disabled before his date last insured. Medical evidence created after the date last insured is generally admissible if such evidence "permits an inference of linkage with the claimant's pre-[date last insured] condition." Bird v. Comm'r of Soc. Sec., 699 F.3d 337, 341 (4th Cir. 2012). Such retrospective medical evidence "is especially appropriate when corroborated by lay evidence," including testimony of a claimant about

his pre-date insured condition. <u>Id.</u> at 342. Here, Dr. Young's opinion appears to be corroborated by Plaintiff's testimony, and the statement of Plaintiff's mother.

Thus, it is recommended that this action be remanded to the Commissioner[7] to evaluate Dr. Young's opinions based on all of the evidence. In doing so, the ALJ should consider Plaintiff's TBI impairment. If Plaintiff is determined to be disabled from TBI or a combination of impairments, it also may be necessary to consult with a medical advisor to determine the date of onset. <u>See</u> SSR 83-20 (onset of disability); <u>Bird</u>, 699 F.3d at 344 ("After considering all relevant evidence, and upon determining that the claimant was disabled at any time, an ALJ must consult with a medical advisor if the date of onset of the disability is ambiguous.").[8]

Because it is recommended that this case be remanded to the Commissioner to evaluate Plaintiff's credibility and the opinion of Dr. Young in light of all of the evidence, the undersigned declines to specifically address Plaintiff's additional allegations concerning his credibility. However,

_____

[7]Plaintiff argues that the Court should award benefits rather than remand this action to the Commissioner based on the length of time this case has been pending before the Commissioner and that two hearings were held before the ALJ. "Where the [Commissioner's] determination is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the case for a rehearing' " pursuant to Section 405(g). <u>Vitek v. Finch</u>, 438 F.2d 1157, 1158 (4th Cir.1971). An award of benefits is more appropriate when remand would serve no useful purpose, <u>Kornock v. Harris</u>, 648 F.2d 525, 527 (9th Cir.1980), or when the record as a whole indicates that Plaintiff is disabled, <u>Parsons v. Heckler</u>, 739 F.2d 1334, 1341 (8th Cir.1984). On the other hand, remand is appropriate "where additional administrative proceedings could remedy defects...." <u>Rodriguez v. Bowen</u>, 876 F.2d 759, 763 (9th Cir. 1989). Here, there are questions as to whether a finding of disability as of December 1, 2006 is warranted and the record does not overwhelmingly support a finding of disability. Thus, it is recommended that this action be remanded for further proceedings.

[8]Although the ALJ obtained testimony at the second hearing from a medical expert, that testimony appears to have concerned Plaintiff's orthopedic impairments only, and not his mental impairments.

if this case is remanded, it is also recommended that the Commissioner consider Plaintiff's remaining allegations of error.

## **CONCLUSION**

The Commissioner's decision is not supported by substantial evidence.  This action should be remanded to the Commissioner to properly consider Plaintiff's credibility and the opinions of Dr. Young, to consider all of Plaintiff's impairments, and to consider Plaintiff's remaining allegations of error.

Based on the foregoing, it is RECOMMENDED that the Commissioner's decision be **reversed** pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

February 7, 2013
Columbia, South Carolina